Good morning, Your Honor. Michael Anderson for the Appellant, United Auto Workers. Trane, Inc. has a pension plan for its workers in its Fort Smith, Arkansas plant, but that plan is not provided by the unilateral grace of the employer. It's the result of collective bargaining between the employees' union and Trane. Which plan? The pension plan. The pension plan? Yes. But the agreement says that it's, well, all right. It could be unilateral. It could be collectively bargained. The terms are not bargained. That's true. But, however, the pension agreement does set forth employer obligations to provide benefits in a particular manner. That distinction actually turns out to be important to the union's case. But in this case, the union is not seeking arbitration against the plan or the plan administrator. The union is claiming that Trane has breached the antecedent agreement to create pension benefits that measure up to those promises. Well, that's precisely the one. The one question I really have for you is related, well, it follows from that. What collective bargaining provision, specific or other document, establishes that the right to temporary pension supplement was collectively bargained? That would be the pension agreement. It's in the appendix, page 164. That's where the pension supplement is laid out. And that's the agreement that also says the administration of the pension plan is not subject to the grievance or arbitration. That is correct. Section 6 of that agreement distinguishes between the administration of the plan and the economic benefits or advantages, which could be established by Trane in the form of insurance or benefit matters. And that, the parties say, was collectively bargained. And that's why that section is connected. So what does your petition to the arbitrator on that issue say? Our petition to the arbitrator is that the employer has not provided the pension supplement, and the other issue is about the bridge benefit in Article 20. I understand the relationship of that to the collective bargaining agreement, but I don't on this other one. Okay. On the supplement, the argument would be that in bargaining the pension agreement in which that pension supplement is found at page 164, the parties agreed to a pension supplement that would be provided to people who took retirement before 60 at the time that they reached the appropriate age. And if we're right about that, and the employer breached an agreement that it made at the bargaining table. What was the breach? The breach was. In relation with this plant closing. Right, but. What was the breach? The breach was that people who took retirement before the age of 60 were not given a pension supplement at the time they reached the appropriate age, which in this case would be at 62. Before or after the plant closing? This would be after the plant closing. I don't understand the argument, the relationship between the plant closed down and what you say was collectively bargained. I mean, if the plant is closed down, it's closed down. So what happens after that is not subject to the bargaining agreement, except for that extension. But we're not talking about the short extension. But if the union is right that the promise was made in collective bargaining, then the fact that the plan isn't paying it out means that the union and its workers are not getting the benefit of their contractual bargain. So what they're asking the arbitrator for. The promise that survives the bargaining, that a promise allegedly made in the bargaining agreement survives the bargaining. Because the benefits were vested before, in the union's view, the benefits were vested before the plant closing. The right to achieve those benefits had already been locked in. Counsel, what document is the retirement supplement grievance focused on? I mean, when I read this, I look at references to the summary plan description. Is that correct? That's correct. That was the original grievance filed by a non-lawyer union representative, Your Honor. So does resolution of that grievance turn on interpretation of that summary plan description? No, because what we are arguing in the arbitration demand, which comes after that first grievance, is to clarify the document that we're talking about. What we're talking about is a breach of the antecedent agreement that gave rise to the summary plan description. In your view, is the summary plan description incorporated into the CBA? No. In our view, the summary plan description is unilaterally disseminated by the employer. What the reference to the summary plan description in the grievance meant is shorthand for the agreement that the union thought it got in the bargaining that led to that pension agreement. Remind me, you may have said this earlier, but what provision then of the CBA is behind that retirement supplement grievance? That is Appendix 164 in the pension agreement. Appendix 164 is a letter from April Steinbaugh to Mike Dietz. I don't understand why you keep referring to that. I know that it's in the I just want to follow along, but that's not, that page isn't helping. I hope I don't have the wrong. In Schedule A and Attachment 1 I'm sorry, it's 184. My mistake, Your Honor. I said 164. I meant 184. Okay, that helps. It says pension supplement. That's right. That's what I meant. I apologize for that. And to be clear, if the union is right that these promises were made by train at the bargaining table, our remedy is not to get the arbitrator to order the plan to discord retirement benefits. That would be the equivalent of what an ERISA benefits lawsuit under 502A1B would require. In my experience, vesting arguments don't go to arbitrators. They go to court. Well, if there's been a breach of a collective bargaining agreement, then The argument, the vesting issues are always alleged breach of contract. Well Or rights that were vested in a contract that has now expired. But Those are judicial issues, in my experience. But in Titantire, this court held that unions can bring arbitration actions over pension matters. What cases? United Steelworkers v. Titantire in 2000. That's 204F3-858. And part of the reason why that's rare, Your Honor, is that Well, then we're going to get a lawsuit pre-arbitration. That'll have to hash out this vesting issue. If your only claim of breach is the vesting of a right in an expired collective bargaining agreement, this is a very different case than the way you argued it. Well, but Your Honor, if there is a contractual breach by the employer, that the employer made a contractual promise that it didn't follow through on in a benefit plan, then the union has a right to bring a contract suit for contract damages against the employer's general assets, apart from any remedy under ERISA. But the arbitrator doesn't decide that. The arbitrator acts, in effect, as the contract adjudicator. No, well, not on these vesting issues. Give me a case out of the Sixth Circuit or our circuit, the courts that have all of these pension vesting issues, typically retirement benefit issues. Give me one where the arbitrator was the decision maker on the vesting question. Well, I know that in Titantire, the arbitrator is the decision maker on a claim of a breach of provision of pension benefits. Yeah, but was it a vesting issue? I don't remember, Your Honor. I don't know. But, I mean, I've been in probably six of these vesting cases. An arbitrator was never the starting point. Yes, I- That tells me, if your alleged breach is based on the vesting of a benefit in a retirement case, in an expired CBA, that tells me that if you prevail on this issue, that means that just the next suit's coming. Why aren't we having that out right now? Well, if the right to receive the benefits was earned under the live term of the previous CBA, then under Nolde Brothers- Well, I can't imagine you'll find that this letter was sufficient to vest. Okay, again, the correct page references- That's obviously a complex issue. Right. But it should be before us instead of hidden. Right. Your Honor, I'm just saying that the union's claim is that the workers are not getting the pension benefits that the employer covenanted to provide in the collective bargaining negotiations. And if the union is right about that, its remedy is not against the plan. Its remedy is for contract damages. That's a big stretch of contract. Vesting arguments typically are not your typical breach of an express contract. But typically, the claim is brought by non-union employees whose only claim arises under state law, which in many circumstances would be preempted by ERISA, where you have a federal contract governed by federal labor law. That kind of preemption doesn't take effect. The vesting issues are all under the federal labor laws. And the case law is very strict about what's vested. And I'm frankly not willing. I guess I haven't studied it because I didn't know that you were- That opens up a whole new lawsuit. Well, I should say they're not being credited with the supplement that the employer bargained for. That's the union's claim. Well, that sounds like an ERISA claim. Well, it would be if the union were suing the plan, but the union is suing the employer for breach of the antecedent contract. And that's no different- Yes, but the contract didn't contain this term because- Well, the term was contained in an expired contract. And so now you're saying an expired collective bargaining agreement can trump an ERISA plan. And I dare say you don't have a case for that. What I'm saying, Your Honor, is that if the right arose under the term, if the retirement right was earned while the previous contract was live, then the claim for pension benefits survives the expiration of the agreement under Nolde Brothers. It was earned only if the union bargained the specific vesting provisions that the case law requires. Right, but if there's a dispute about whether that was bargained- That's a judicial issue. That's not an arbitrator issue. But the arbitrator gets to decide whether the original promise was made. No, not if the original promise- Well, not if the promise does not survive the life of the bargaining agreement the arbitrator is authorized to enforce. Again, Your Honor, the- That's not an arbitrator- Vesting of provisions bargained in an expired contract is not within the typical authorization of an arbitrator. The answer to that is Nolde Brothers, and Titan Tire speaks to Nolde Brothers. Nolde Brothers is the case that says that if benefits are earned under the term of a collective bargaining agreement, then the arbitrator has jurisdiction even after expiration to enforce it. And I'd like to save my remaining time for rebuttal. I'm sorry, unless you have a question. Well, do you want to say anything about Article 14 in the arbitration provision? Yes. And that was the focus of the briefing. I mean, we have the briefing if you think it's- Exactly. Agreed-upon benefit levels cannot mean what the district court said it means. The district court says that it means the amount of money, the bottom-line amount that workers are due. But that is not provided for in the agreement, and there's no schedule in the collective bargaining agreement that lays out specific amounts. What the parties bargained were enhancements, supplements, credits, contingencies that all affect the calculation of the pension benefit. And to have any meaning, agreed-on benefit level has to mean agreed-on benefit package, agreed-on benefit terms. Why does it say levels then? That language is used in other cases in five other courts that I've cited where the courts say that levels has to mean the same thing as benefit package, benefit rights. Well, they're different words. Why would we read it that way, just because- Right, but those cases refer to the term of art benefit levels as well. You're saying it's a term of art in labor law agreements? That's been interpreted by the prior cases that I cited. Parties in labor agreements use the word benefit levels when they really mean benefit packages, or what was the other- Benefit terms. We see them as synonymous. Okay. All right. Thank you. Okay, thank you, Your Honor. Mr. Parker? May it please the Court, Your Honors. Your Honors, the district court determined that both of the grievances that the union sought to compel to arbitration were not arbitrable because they do not involve agreed-upon benefit levels. And the court can affirm the district- But wait a minute. On the other one- Yes, sir. It specifically- The alleged violation is of Article 20, 2, 166B3 of the collective bargaining agreement. Yes, Your Honor. Now, the pension plan administrator ought to be entitled to know, in considering the claim, whether an arbitrator has ruled that your position violates that provision of the bargaining agreement. Just in a logical sequence of resolving a dispute. It seems to me that claim of a breach of collective bargaining agreement is clearly arbitrable, and it's everybody's advantage to get the arbitrator's answer before the claims administrator is asked to do his or her job just within the four corners of the pension plan, which, according to the union, violated the bargaining agreement. That's what Judge Posner said in Boeing. And Boeing said, okay, we'll agree. Let's arbitrate first. And then they didn't like what the arbitrator ruled. Well, Your Honor, but first, to get to that point, the court would have to determine that that dispute, the dispute that arises, the bridging dispute from the CBA, falls within the scope of the arbitration provision. Well, of course it does. Well, Your Honor, we would submit that it doesn't because- But that's a question for the arbitrator. Not as to whether- In classic labor law. No, Your Honor. The question would be for the court to determine whether or not the dispute is one to even go to the arbitrator. And here, to make that determination, you've got to look at the arbitration provision. So you're saying Boeing blew it in the Seventh Circuit when they agreed to arbitrate in response to this very stage of the process? I'm not saying that when there was the decision from the arbitrator that the court was wrong to say- No, no, no. I'm talking about how it got to the arbitrator. The only difference between this case and Boeing is that Boeing, after taking the position you're taking today, said, oh, all right, we'll arbitrate first. I think that's a big- Yeah. I think that's a big distinction. We're saying here- You're saying that Judge Posner would have ruled differently if he had the question that an arbitrator normally decides, namely whether is this alleged breach of the bargaining agreement within my authority? I don't know what Judge Posner would have decided, Your Honor, but I think it is the court's- I think I'm pretty sure I know. I think it is the court's task, Your Honor, to determine whether disputes fall within an arbitration provision. That case is distinguishable where the employer decided to arbitrate. Boy, you're up against a lot of Supreme Court authority there on what's decided by the court and what's decided by the arbitrator. Forget ERISA for the moment. We're not up to ERISA yet. We're up to whether this alleged breach of the bargaining agreement is within the authority of the arbitrator. Well, Your Honor, in AT&T Technologies versus Communication Workers of America, it's cited in our brief. It's 475. That's the basic case. That's the basic case, Your Honor, and there the court held that courts, not arbitrators, are determined whether a grievance is subject to an arbitration clause. What's your argument that it isn't? Absolutely, Your Honor. Well, what is your argument that it isn't? Well, our argument, first of all, is you have a broad arbitration provision. We stipulate to that. The arbitration provision then carves out disputes relating to the administration, establishment, application, or interpretation of a pension plan. This does, but then – That's your only argument against arbitrability. Well – If you say yes, then I'll go on and I'll understand your position. It's not, Your Honor. What's your other argument against arbitrability, leaving the pension plan aside? Again, the arbitration provision carves out disputes relating to the pension plan. That's the same argument. Well, I was going to continue my point. My point continues on, and they agree that – I don't think this is a dispute. A dispute with the union that these two grievances both are carved out by the exception in the arbitration provision as it relates to pension and insurance agreements. The dispute is whether these two grievances involve agreed-upon benefit levels. That's the point that Judge Colleton was getting to at the end of – But on this one, this first issue only, the union's position is that the provision in the pension plan is not inconsistent with what was collectively bargained. I don't believe that's the case, Your Honor. I think the union is saying that the collective bargaining agreement provides a right to the union members in addition to the terms that are in the pension plan. Right. Therefore, the plan is inconsistent with the bargaining agreement. Yes, that is – Right. Yes, Your Honor. And that's where the Seventh Circuit was in Boeing, and the arbitrator said that's right. But again – I agree, Your Honor. But again, it's a – That's where we are here. But it's a huge distinction there that the employer consented to arbitrate. Here – Well, but – Here the district court correctly in looking at whether that grievance falls within the scope of the arbitration provision said no, it doesn't. It said this dispute involves pension benefits. Those are excluded from the arbitration provision. Then looked at, well, do they involve agreed-upon benefit? If the breach of contract is an issue of law, would you like us to decide this one day novel was an issue of law? Well, I think you are – I mean, the arbitrators, they're subject to what's in the bargaining agreement. But, Your Honor, I'm not – I think we're going a step further here. You're talking about what an arbitrator is going to do. I'm talking about whether this case should even go to an arbitrator. That's what I'm talking about. You're saying you decide no arbitrability based upon the pension insurance agreement that, in your view, made arbitration subsidiary to claims administration. No, Your Honor, I'm not. And I just want to – Go ahead. Why don't you spell out what you're saying? I think perhaps I'm not explaining myself clearly enough here, Judge. When you look at the arbitration clause that is in the collective bargaining agreement itself, it's in Article 14. It's Paragraph 144. That provision says that any grievance which involves the interpretation or application of this agreement – and then it goes on to say those are arbitrable. This dispute, at that point, given that it arises under the collective bargaining agreement, would be arbitrable. I agree with that. But then you have to keep reading the arbitration provision. You have to go to Paragraph 146, which says – and this is, again, from the collective bargaining agreement. And it says the party specifically agreed that no arbitrator shall have the authority in questions involving the establishment, administration, interpretation, or application of any company pension plan or insurance plan except for agreed upon benefit levels. Our argument, and it's the same argument that the district court agreed with, is that this dispute involves the interpretation, administration, or application of the pension plan. And, again, I don't think they disagree with that. So you're saying that a claims administrator whose authority does not derive from the bargaining agreement has the exclusive authority to interpret this provision of the collective bargaining agreement? No, that's not our position, Your Honor. Who decides it then? The court, and that's why – When? Excuse me, Your Honor? When does the court decide it? Well, that's how they set this case up. When they set this case up at the district court level, two counts. I'm like Judge Carlton. I don't understand your position. If this is a decision that can't be decided by an arbitrator and can't be decided by an ERISA claims administrator, when does a court decide it? A court would decide it if this court here were to affirm the district court's ruling, then count one of their complaint, which is to compel arbitration, would drop out of the lawsuit. They had count two, which is in the event you find this dispute is not subject to arbitration, you, Judge, need to decide whether there was a breach of contract. And that's what we submit should happen here if this court affirms the district court's ruling. So there would be a determination as to whether Train breached the CBA, but the court would make that finding, and that's how they pled this case in their complaint before the district court, Your Honor. So I think it does matter whether or not initially the court makes a determination as to whether this dispute is subject to arbitration. Again, both sides agree that it involves interpretation or application and administration of a pension plan. The dispute in this case is whether or not both of these grievance touch upon agreed upon benefit levels. And we would submit that neither dispute does, Your Honor, and I'm happy to address that. Yeah, go ahead. He says that agreed upon benefit levels is a term of art, and it really means benefit packages or benefit, I forget the other term now, but basically it means whether the people are eligible for benefits, I guess, or certain benefits. And that's the dispute. We take the position throughout our briefing, Your Honor, that they want to define benefit levels as benefit rights or benefit eligibility, whereas we define benefit levels as the amount of money that someone is going to receive. And the way we would define benefit levels, Your Honor, for an example is if you look at the pension and insurance agreement, if you look at where the parties agreed what benefits the company would provide to the bargaining unit members, it sets out, for example, with respect to vacation. It says if you've been with the company between zero and one years, you get no weeks. If you've been with the company between one and two years, you get a week. And there's different levels as to that benefit. Similarly, for example, it touches on the levels of benefits that would be provided with respect to certain types of insurance as to what the deductibles would be, as to what the coverage levels would be, as to what the out-of-pocket expenses would be. Those are how we see benefit levels, Your Honor. And we cite several cases throughout our briefs. Where are those set out, the things you were just describing? It's in the pension and insurance agreement, Your Honor. So you're saying this agreement contemplated that there would be such things in the pension and insurance agreement. Yeah. Well, this is the CBA. The CBA itself, Your Honor, explicitly incorporates by reference, and that is... So that was a preexisting agreement, the one you're quoting from? Well, they were both entered into around 2013, Your Honor. All right. But the CBA incorporates by reference the pension and insurance agreement. It does that in the record at 101 and 102. Then there's another copy of the CBA in those page numbers at 343 and 344. So you view this exception as very narrow, then, and only applying to? Whether it's benefit rights or benefits eligibility, yes, Your Honor. No, I'm saying you read it to me, and it only applies to disputes about whether you're getting the right amount of vacation time or the right deductible on your insurance. Not necessarily whether the individual is getting that, because that determination, I think, as Judge Loken was noting, would be determined by the plan administrator, but whether or not TRAIN has followed through in taking its promises from the pension and insurance agreement and incorporating those promises into the formal plan that it later created. The sequence here, Your Honor, was there was the pension and insurance agreement entered into around 2013, and then a pension plan was created in 2015, which then gave effect to the different agreements reached in that insurance agreement. I see. So you say if they didn't move the 2013 numbers about levels correctly into the 2015 level, that would be harmful? Exactly, Your Honor. Exactly. And I do want to focus. I only have three minutes left. I want to focus on the point that Judge Loken led with here, going back to the temporary early retirement supplement, because there I don't even think you need to get into wading into whether that grievance involves agreed-upon benefit levels. I think you can say that that grievance is not arbitrable, simply because it doesn't even fall within the scope of the broad arbitration provision in paragraph 144, and that is because, as opposing counsel noted, what gives rise to that claim is a summary plan description, which he says and agrees is not incorporated into the CBA. They've now pivoted and said, no, it's a portion from the pension and insurance agreement that gives rise to that claim. But the provision that he referenced to you, I think it was page 184, that's a completely different provision than what they've been proceeding under throughout the course of this lawsuit, Your Honor. If you go back and look at the complaint in this case, the complaint, and it's in the record at app 11, if you look at paragraph 15 of the complaint, they talk about it being a pension supplement applying to individuals between ages 60 and 62. They make that same argument before the district court in their motion to compel arbitration. That's in the record at app 225. But now they're citing to a completely different provision of the pension and insurance agreement. The one that they had previously been going under, Your Honor, is in the record at app 180 and app 181, which does make clear that that supplement is eligible to individuals between the ages of 60 and 62. They don't like that language, and so now they're arguing that they're talking about a supplement on page 184. But if you look at the language on 184, that can't be the provision that they were always moving under, because it makes clear on 184 and .3 that that benefit wouldn't begin until the first day of the month when the person reached age 65. And they're talking about a benefit that's between the ages of 60 and 62, like the one discussed on pages 180 and 181 of the appendix. So we would argue, Your Honor, that that dispute over the temporary early retirement supplement Just educate me. In terms of somebody who was an employee of considerable tenure at the time of the plant closure, what's the difference between the provision on 180 and 181 and one on 184? Who's affected by one versus the other? Well, to get the one that How old would you be, in other words? If you were 60 when it shut down versus if you were 59? Well, to get the one that's on 180 and 181, you have to have been It doesn't matter how old you were. And this provision is not unique to shutdowns. Neither is the one that might Oh, I know that. Right. But that provision, Your Honor, you would have had to have been at least 55 when you retired, and you would have had to have waited until you were at least age 60 to have commenced your early retirement pension benefit. That is set out in Section 5.2b of the appendix to the pension plan is where that comes from. This other pension supplement that they're referring to, Your Honor, on page 184, it would require that the employee work until the employee is at least age 65. So they're different. One of them you could get potentially if you retired at 55 with 10 years of service, so long as you waited to 60 to commence the benefit. But on this one, Your Honor, you wouldn't be able to get it until you were at least age 65. They're two completely different supplements. And so you say that doesn't even get past Section 144 because why? That argument he's making now about page 184? Yeah, because it's they were initially talking about a summary plan description, which he agrees isn't incorporated into the CBA, so that can't get you to 144. If it's the SPD, it doesn't get in. But if he's basing it on this pension agreement. Well, I would say that if you go back and look at their complaint in the district court, look at what they argued in the motion to compel arbitration, look at what they put in their opening brief here. They never referenced page 184. I understand that. It's a waiver. That's not referenced until the reply brief, Your Honor. And I believe that they're switching horses, if you will, in trying to – What about the argument they did make based on pages 180 and 81? You say they did argue that in the district court? Right. They did argue that. This is the supplement provision that they're saying that there is some issue with it. They should be able to get benefits under that one. And I guess, Your Honor, they're taking the position that Trane didn't accurately reduce to writing in this agreement what the parties agreed to. I think that must be what they're arguing. But in the – Why isn't it arbitrable? Why isn't it – Why isn't that position arbitrable? The page 180, 81 argument. You're saying they've abandoned it on appeal or you're saying it's not arbitrable? I'm saying that they've – I'm saying it's not arbitrable and that they have abandoned it on appeal. Why isn't that arbitrable? Well, there – Because it doesn't apply to agreed-upon benefit levels or because – That's another reason, Your Honor. What's the 144 argument? Well, as to that, if you're going to say that they're moving under 81, 81, and 122, I would have to walk away from 144 and then go down to the agreed-upon benefit levels. Yes, Your Honor. Do you have any further questions, Your Honor? On issue two, then, is that like issue one as you foresee it? If we reverse the district court on count one and remand, the court turns to count two, and count two would be a judicial resolution of this vesting argument? I think it, too, would go down to the district court, and there would be a determination by the district court as to whether Train somehow breached its promise with the union as to what benefit it was supposed to provide to the union members. Yes, Your Honor. Well, that would be if we affirmed the district court. That's if you affirmed the district court, yes. Yes, I'm sorry. Oh, yeah, right. Is that what you meant? Right, right. Yes. So if we affirm that. If it's not arbitrable. Yes, so I think to summarize it, we're not trying to leave them without a remedy. We're not saying you've got to go to the plan administrator because we know the plan administrator shouldn't look outside the terms of the plan. We're just saying this dispute doesn't fall within the definition of the arbitration provision. Therefore, since it's not arbitrable, it's like any other claim that's normally filed in court where the determination is made that it's not arbitrable, then the court just hears the claim and it proceeds before the court. So if there wasn't this opportunity for immediate appeal of an arbitration decision by the district court, you're saying the case would have proceeded to a judicial decision on their contract claim. That's right, because if you look at what happened at the district court level, the district court denied their motion to compel arbitration, but it didn't dismiss the case. The case is still pending. Well, it's not now, but Claim 2 was still alive. They, for purposes of wanting to pursue this appeal, we stipulated to dismiss without prejudice. Well, I saw that. I wondered why you had to – so the denial of the motion to compel arbitration is not immediately appealable. Correct. So do we have a final decision then? Is this one of these problems with – No, because there's been a final judgment entered. So that case is – that case – Well, but they're going to revive Count 2 as soon as – if we affirm. So the way I would see it playing out, Your Honors, if you affirm this – if you affirm the district court, that case is not going – it's not – you wouldn't be remanding it back down for them to then proceed on both grievances to make a determination because the union has dismissed that lawsuit. The union would, however, be able to commence a new lawsuit in the same court wherein it asked the court to make a determination. Well, yeah, I – Because there's no case to reopen. But why didn't – why shouldn't we – why shouldn't we say that that's a manufactured appellate jurisdiction problem and that the district court should have had to decide Count 2 before the case was appealable? I think, Your Honor, just simply because the party stipulated to dismiss Count 2. That doesn't work. We have cases about people stipulating to do that in order to get around the final judgment rule where we've said you can't do that. You can't just dismiss without prejudice on the understanding that you'll file it again later so that you can appeal something that isn't ordinarily appealable because that's just circumventing the requirement that you take the case all the way to the finish. I forgot to ask about that, but I remember noticing that dismissal without prejudice, and it raised that concern for me. Maybe you haven't really – I haven't raised that issue, Your Honor. I haven't. It hasn't been raised. Of course, the parties agree they want to conspire to get an appellate jurisdiction, but we may have to think about that because you're saying the case could have proceeded to judgment on Count 2. Yeah. And if the union lost there, they could have appealed and said this should have been arbitrable in the first place. Yes, Your Honor. Somebody should have sought a 54B determination. Yeah, that's another way to do it. Or 1292. Yeah, 1292. But the district court wrestled in the first instance with the most efficient way to do this. He might have said, well, let's just decide Count 2. It's just a legal issue, right, the contract? Right. Exactly. That just wasn't an issue the parties were contemplating, Your Honors. Somebody didn't look at our case law very carefully. On jurisdiction. Yep. On 1291 evasive tactics. Any further questions, Your Honor? I wasted a lot of client money. That's certainly not been our intent. Our intent hasn't been to waste money. Well, it's not so obvious in our case law. Okay. It's pretty very unfortunate. All right, so further questions? Any time for rebuttal? His time had expired, Your Honor. I'll give you a couple minutes. Thank you, Your Honor. Your Honors. Your Honor, we did look at the issue of appellate jurisdiction. The first answer would be that the FAA now applies to collective bargaining agreements, and the FAA provides for interlocutory appeal from the denial of a motion to compel arbitration, notwithstanding 1291 finality. And if the court has further questions about that, I'd welcome the opportunity to brief it. Well, we may want to do that because I think your counterpart just said, no, it wouldn't ordinarily have been appealable. Under the FAA, a motion to deny an order denying a motion to compel arbitration is immediately appealable under 9 U.S.C. Section 16. Well, you don't cite that in your jurisdictional statement, or do you? No, you just say 1291. I have some recollection of that amendment. But your brief just states 1291 as a final judgment, but you say you think alternatively it could be appealable as an interlocutory matter. That's right. And, Your Honor, the case, I mean, the quick answer to the question about whether the arbitrator is being asked to interpret the plan, which is excluded from arbitration, is that we're not asking the arbitrator to interpret the plan. We're asking the arbitrator to interpret the contract. And the contract terms that define what benefits are available to employees has to be considered as the agreed-upon benefit levels, that in this context there's no way to define levels as meaning something narrower without obliterating the arbitration right altogether. There are simply no fixed monetary levels in the contract that would answer to that sort of narrow reading of agreed-on. What about his examples involving insurance deductibles and pension tax? There's nothing like that for pension, which is the thing that counts here. What do you mean it's the thing that counts? For the pension agreement, what counts are the contingencies, supplements, credits. I know, but you might not have bargained to get that into the exception. Well, we certainly did bargain on what those terms would be, and we take the position from the case law I provide in my brief that the reference to benefit levels has to be read to mean benefit terms. And finally, Your Honor, the Eighth Circuit's site on Nolde Brothers with pension benefits is Kelwood, 592 F. Second, 1008 at 1011. That's Eighth Circuit, 1979, written by Judge Bright, where he applies the reasoning of the Supreme Court in Nolde Brothers to say that if a benefit was earned under the term of an expired contract, the arbitrator has jurisdiction after contract expiration to enforce it. And it's applied in a pension context in Kelwood. Is that cited in your brief? Yes, Kelwood's in our brief. And if the Court has further questions... What about the... Our counsel says your reliance on page 184 was first raised... Your Honor, I may have been flustered at the podium. 180 and 181 speaks to pension supplements, and I believe that that's what I referred to in my opening brief. That's the one, the early retirement supplement at 180 to 181 is the one that speaks of... The supplement is paid to age 62. So, again, I apologize for lack of clarity about the pagination of the appendix there. But it's in my brief. That's where it's found. And our position is that that was collectively bargained. And, Your Honor, if you have any further questions, I'd like to thank the Court for its time. Thank you, Counsel. The case has been clearly briefed and argued. The argument's been helpful, complex, and we'll take it under advisement.